1  Douglas E. Watts, SBN 182274
   WATTS LAW OFFICES
2  1745 Creekside Dr.
   Folsom, CA 95630
3  Telephone:     (916) 337-5221
   Facsimile:      (916) 404-5031
4  dougwattsesq@yahoo.com

5  Attorneys for Plaintiffs NICOLE SAHAJ-MYERS,
   STACIE WALLS, JONA SCHER
6

7              **UNITED STATES DISTRICT COURT**

8            **EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 9  NICOLE SAHAJ-MYERS, STACIE WALLS, JONA SCHER, | **Case No.** |
| 10 | **COMPLAINT FOR DAMAGES, EQUITABLE, AND/OR INJUNCTIVE RELIEF** |
| 11 | |
| 12    Plaintiffs, | VIOLATIONS OF CALIFORNIA'S FAIR EMPLOYMENT AND HOUSING ACT, GOV'T CODE §12940, *ET SEQ*; VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §2000e, *ET SEQ*.;  VIOLATIONS OF THE UNITED STATES CONSTITUTION AND FEDERAL CIVIL RIGHTS STATUTES, 42 U.S.C. §§1983, 1985, *ET SEQ*. |
| 13 v. | |
| 14 | |
| 15 COUNTY OF EL DORADO; EL DORADO COUNTY SHERIFF'S DEPARTMENT; MOKE AUWAE; HOWARD JENCKS; JEFFREY DREHER; BOB ASHWORTH; KEVIN HOUSE; MARK GETCHEL; CRAIG THERKILDSEN; and DOES 1 through 50, inclusive, | |
| 16 | |
| 17 | **JURY TRIAL DEMANDED** |
| 18 | |
| 19    Defendants. | |

20

21      Plaintiffs complain and allege as follows:

22              **PARTIES AND JURISDICTION**

23      1.    Plaintiff NICOLE SAHAJ-MYERS is, and at all relevant times hereto has been, a

24  United States citizen and a resident of the County of El Dorado, State of California.  Plaintiff

25  SAHAJ-MYERS is, and at all relevant times hereto has been, an employee of Defendants

26  COUNTY OF EL DORADO ("COUNTY") and the EL DORADO COUNTY SHERIFF'S

27  DEPARTMENT (the "EDSO" and, collectively, "Defendants") within the meaning of the

28
                                    -1-

California Fair Employment and Housing Act ("FEHA"). Plaintiff SAHAJ-MYERS is a Community Services Officer ("CSO") with the EDSO, a position she has held since approximately 2001. She is also a member in good standing of the Operating Engineers Union, Local One.

2. Plaintiff STACIE WALLS is, and at all relevant times hereto has been, a United States citizen and a resident of the County of El Dorado, State of California. Plaintiff WALLS is, and at all relevant times hereto has been, an employee of Defendants COUNTY and EDSO within the meaning of the FEHA. Plaintiff WALLS is a CSO with the EDSO, a position she has held since approximately 2004. She is also a member in good standing of the Operating Engineers Union, Local One.

3. Plaintiff JONA SCHER is, and at all relevant times hereto has been, a United States citizen and a resident of the County of El Dorado, State of California. Plaintiff SCHER is, and at all relevant times hereto has been, an employee of Defendants COUNTY and EDSO within the meaning of the FEHA. Plaintiff SCHER is a CSO with the EDSO, a position she has held since approximately 2003. She is also a member in good standing of the Operating Engineers Union, Local One.

4. At all times relevant to this action, Defendants COUNTY and the EDSO were employers within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, and, as such, they were prohibited from discriminating against Plaintiffs, harassing them, and retaliating against them in the context of their employment on the basis of their gender, mental state, physical disabilities, marital status, and assertion of Constitutionally protected rights.

5. Defendants COUNTY and the EDSO, including their respective units, departments, and/or political subdivisions are, and at all times relevant to this action were, employers operating

-2-

1   as public entities within the State of California, County of El Dorado, who regularly employed

2   more than fifteen (15) persons.

3   　　　6.　　Defendants COUNTY and the EDSO are county municipalities located within the

4   State of California and doing business as government entities under color of state authority and

5

6   law.

7   　　　7.　　Defendant MOKE AUWAE ("AUWAE") is an individual whose residence is located

8   within the State of California. AUWAE is a supervisor and/or managerial employee of the EDSO

9   who holds the rank of Sergeant. For purposes of the cause of action under the Civil Rights Act,

10  AUWAE is being sued in his individual capacity acting under color of law.

11  　　　8.　　At all times relevant to this action, AUWAE was a supervisor, manager, and/or

12  managing agent of the EDSO, and as such, he was prohibited from discriminating against,

13

14  harassing, and retaliating against employees on the basis of, *inter alia,* gender, mental state,

15  physical disabilities, marital status, and/or making complaints regarding violations of Title VII

16  and FEHA.

17  　　　9.　　Defendant HOWARD JENCKS ("JENCKS") is an individual whose residence is

18  located within the State of California. JENCKS is a supervisor and/or managerial employee of

19  the EDSO who holds the rank of Sergeant. For purposes of the cause of action under the Civil

20  Rights Act, JENCKS is being sued in his individual capacity acting under color of law.

21

22  　　　10.　At all times relevant to this action, JENCKS was a supervisor, manager, and/or

23  managing agent of the EDSO, and as such, he was prohibited from discriminating against,

24  harassing, and retaliating against employees on the basis of, *inter alia,* gender, mental state,

25  physical disabilities, marital status, and/or making complaints regarding violations of Title VII

26  and FEHA.

27

28

11. Defendant JEFFREY DREHER ("DREHER") is an individual whose residence is located within the State of California. DREHER is a supervisor and/or managerial employee of the EDSO who holds the rank of Sergeant. For purposes of the cause of action under the Civil Rights Act, DREHER is being sued in his individual capacity acting under color of law.

12. At all times relevant to this action, DREHER was a supervisor, manager, and/or managing agent of the EDSO, and as such, he was prohibited from discriminating against, harassing, and retaliating against employees on the basis of, *inter alia,* gender, mental state, physical disabilities, marital status, and/or making complaints regarding violations of Title VII and FEHA.

13. Defendant BOB ASHWORTH ("ASHWORTH") is an individual whose residence is located within the State of California. ASHWORTH is a supervisor and/or managerial employee of the EDSO who holds the rank of Lieutenant. For purposes of the cause of action under the Civil Rights Act, ASHWORTH is being sued in his individual capacity acting under color of law.

14. At all times relevant to this action, ASHWORTH was a supervisor, manager, and/or managing agent of the EDSO, and as such, he was prohibited from discriminating against, harassing, and retaliating against employees on the basis of, *inter alia,* gender, mental/emotional state, marital status, and/or making complaints regarding violations of Title VII and FEHA.

15. Defendant KEVIN HOUSE ("HOUSE") is an individual whose residence is located within the State of California. HOUSE is a supervisor and/or managerial employee of the EDSO who holds the rank of Lieutenant. For purposes of the cause of action under the Civil Rights Act, HOUSE is being sued in his individual capacity acting under color of law.

16. At all times relevant to this action, HOUSE was a supervisor, manager, and/or managing agent of the EDSO, and as such, he was prohibited from discriminating against,

-4-

1  harassing, and retaliating against employees on the basis of, *inter alia,* gender, mental/emotional

2  state, marital status, and/or making complaints regarding violations of Title VII and FEHA.

3      17. Defendant MARK GETCHEL ("GETCHEL") is an individual whose residence is

4  located within the State of California. GETCHEL is a supervisor and/or managerial employee of

5

6  the EDSO who holds the rank of Captain. For purposes of the cause of action under the Civil

7  Rights Act, GETCHEL is being sued in his individual capacity acting under color of law.

8      18. At all times relevant to this action, GETCHEL was a supervisor, manager, and/or

9  managing agent of the EDSO, and as such, he was prohibited from discriminating against,

10  harassing, and retaliating against employees on the basis of, *inter alia,* gender, mental/emotional

11  state, marital status, and/or making complaints regarding violations of Title VII and FEHA.

12

13      19. Defendant CRAIG THERKILDSEN ("THERKILDSEN") is an individual whose

14  residence is located within the State of California. THERKILDSEN is a supervisor and/or

15  managerial employee of the EDSO who holds the rank of Captain. For purposes of the cause of

16  action under the Civil Rights Act, THERKILDSEN is being sued in his individual capacity acting

17  under color of law.

18      20. At all times relevant to this action, THERKILDSEN was a supervisor, manager,

19  and/or managing agent of the EDSO, and as such, he was prohibited from discriminating against,

20

21  harassing, and retaliating against employees on the basis of, *inter alia,* gender, mental/emotional

22  state, marital status, and/or making complaints regarding violations of Title VII and FEHA.

23      21. This Court has jurisdiction over the subject matter pursuant to 42 U.S.C. §§1983,

24  2000e, 28 U.S.C. §§ 1331 and 1367.

25      22. This Court has venue over this action in that Defendants conducted their principal

26  place of business within the territorial boundaries of this judicial district.

27

28

23. This Court has jurisdiction over Defendants in that they are government agencies that, at all times relevant hereto, caused Plaintiffs to be discriminated against, harassed, retaliated against, singled out, humiliated, and targeted for unfair and/or unlawful termination from employment with the EDSO in violation of Plaintiffs' Constitutional rights, and operated under color of state authority, within this judicial district.

24. Plaintiffs each have exhausted all administrative remedies with the California Department of Fair Employment and Housing ("DFEH"), as well as with the Federal Equal Employment Opportunity Commission ("EEOC"). Plaintiffs each timely filed a complaint of employment discrimination with the DFEH, and Plaintiffs have filed this action within one year of the DFEH's issuance of a right-to-sue letter.

25. Plaintiffs each timely filed a charge of employment discrimination with the EEOC, and Plaintiffs have filed this action within ninety (90) days of the EEOC's issuance of a right-to-sue letter.

26. Plaintiffs do not know the true names and capacities of Defendants sued herein as DOES 1 through 50, and therefore sue these Defendants by fictitious names. Plaintiffs will amend their Complaint to state the true names and capacities when ascertained. Plaintiffs are informed and believe and based thereon allege that each of the fictitiously named Defendants is responsible in some manner for the occurrences and damages alleged herein, and that Plaintiffs' damages as hereinafter set forth were proximately caused by said Defendants.

27. Plaintiffs are informed and believe, and based thereon allege that each of the Defendants herein were, at all times relevant hereto, the agents, representatives, servants and employees of the remaining Defendants, and were acting at least in part within the course and scope of such relationship, and that the wrongful acts alleged herein were committed by such Defendants, and each of them.

-6-

## FACTUAL BACKGROUND

### *Plaintiff Nicole Sahaj-Myers:*

28.     Plaintiff SAHAJ-MYERS started work at the EDSO as a Dispatcher I in March, 1998, having learned about the job opening from an El Dorado County public job bulletin.  At the time she was hired, Plaintiff SAHAJ-MYERS received a County Policy Handbook which purported to highlight the EDSO's adherence to, and compliance with, all federal and state employment laws regarding unlawful employment practices, such as sex-based discrimination.

29.     When Plaintiff SAHAJ-MYERS accepted the EDSO's offer of employment as a Dispatcher, she had no knowledge of the custom, pattern, and practice within the EDSO wherein certain highly-placed, well-connected, male supervisory officers were allowed to discriminate against, harass, retaliate against, and otherwise create a hostile, damaging work environment for female employees of the EDSO – both sworn (peace officers) and non-sworn (Community Service Officers, Dispatchers, etc.) – who speak up for themselves, complain about discriminatory treatment, refuse unwanted sexual overtures, and otherwise refuse to play by the unofficial "rules" established by their male superiors.

30.     Plaintiff SAHAJ-MYERS completed a one-year probationary period without incident, and thereafter handled her Dispatcher job duties capably.  In 2001, she was promoted to the position of CSO, a position which involves significantly greater responsibility – including face-to-face interaction with the public and the handling of El Dorado County Jail inmates – than the job of Dispatcher.

31.     Plaintiff, who was married when she was hired, handled her CSO job duties well, and routinely achieved high marks both for her job performance and her positive attitude in the workplace.  For the most part, Plaintiff SAHAJ-MYERS also got along well with her co-workers (some of whom were also CSO's; others of whom were not) and her chain of command.

-7-

1      32.     Plaintiff gave birth to two children, the first in March, 2005; the second in April

2  2008. In January 2009, Plaintiff and her husband became legally separated and filed for divorce.

3      33.     Over time, Plaintiff SAHAJ-MYERS learned of and became accustomed to what

4
   she and her female co-workers (both sworn and non-sworn) refer to as the "Boys' Club" within
5
   the EDSO. Plaintiff SAHAJ-MYERS learned (as did her fellow Plaintiffs) that members of this
6
7  unofficial "Club," including the individuals named in this Complaint and other male supervising

8  officers, target female EDSO employees they deem to be vulnerable, either because of their

9  perceived weaknesses, feminine personalities, marital or relationship status, or mental/emotional

10  state.

11      34.     Once the EDSO's predominantly male supervising officers target female EDSO
12
   employees, the females are subjected to verbal harassment, invasions of privacy, are treated less
13
14  favorably than their male counterparts (or than the female EDSO employees they deem to be

15  playing by the "Boys Club" rules), given unusual and demeaning tasks, and unfairly written up

16  for alleged conduct which other, "favored" members (most of whom are male) of the EDSO

17  engage in routinely without incident or complaint from the supervisors.

18      35.     The EDSO's supervising officers routinely target female EDSO employees they
19
   believed are unattached; that is, not either married or in a steady relationship with a man. If the
20
   female EDSO employees are in relationships, the "Boys Club" members tend to leave them be; if
21
22  they are not, the targeting behavior ensues.

23      36.     In January of 2001, Plaintiff SAHAJ-MYERS suffered a neck injury while on the

24  job. Although Plaintiff filed a Workers' Compensation claim, she continued to work through the

25  injury until October 2002, when a Workers' Compensation doctor deemed Plaintiff unable to

26  continue working until corrective surgery could be performed.

27

28                                      -8-

1    37.    In or around the spring of 2003, Plaintiff underwent surgery on her neck.

2    Following a lengthy healing and rehabilitation period, Plaintiff SAHAJ-MYERS returned to her

3    CSO job in 2004.

4    38.    After returning to work following surgery, Plaintiff SAHAJ-MYERS began to feel

5

6    that she was being targeted for termination by her male EDSO superiors for reasons related not

7    only to her gender, but also to her work restrictions and need for reasonable accommodations.

8    39.    Like many female members of the EDSO (including her co-Plaintiffs), Plaintiff

9    SAHAJ-MYERS valued her good-paying CSO job and did not wish to take issue with, or file

10   complaints against, her supervisors for every little incident in which she felt she was being treated

11   unfairly.  Instead, she took a "go along to get along" mentality when dealing with the "Boys

12   Club."

13

14   40.    What Plaintiff SAHAJ-MYERS got in return for trying to appease the Boys Club,

15   and for ignoring the frequent violations of her rights to be free from retaliation and discrimination

16   based upon her gender and past injuries, was more retaliatory actions, greater scrutiny on her job

17   tasks and performance, and the undeniable feeling that she was in the Boys Club's crosshairs for

18   termination.  Plaintiff's January 2009 separation, which ended a 12-year marriage, only made

19   matters worse.

20

21   41.    Beginning in or around 2007 and continuing until Plaintiff SAHAJ-MYERS went

22   out on stress-related leave in January 2010, these Defendants harassed and retaliated against

23   Plaintiff, created a hostile work environment for her, and caused debilitating, crippling emotional

24   distress by unfairly making Plaintiff fear for her long-held job.

25   42.    One particular example of Defendants' harassing, retaliatory conduct toward

26   Plaintiff SAHAJ-MYERS occurred in October 2009, when AUWAE ordered Plaintiffs SAHAJ-

27   MYERS and WALLS to take male inmates from the El Dorado County Jail and personally clean

28

-9-

1  out the EDSO men's locker room, instead of allowing the EDSO's janitors to clean the facility, as

2  was the EDSO's standard practice.

3      43.   AUWAE's order to Plaintiffs SAHAJ-MYERS and WALLS – again, just one

4  example of Defendants' discriminatory, harassing conduct toward Plaintiffs – was made in spite

5  of Plaintiffs having expressed great concern not only for their personal safety (Defendant

6  AUWAE specifically ordered Plaintiffs to work alongside **criminals**), but also for the humiliation

7  at having to clean the *men's* EDSO locker room, something that is **not** in the CSO job description,

8  and something these two long-serving CSO's had never done before.  On top of that, the EDSO's

9

10  Patrol Captain refused an offer from a male EDSO Sergeant, who had learned of AUWAE's order

11  to clean the men's locker room and feared for Plaintiffs' safety, to clean it himself and spare

12  Plaintiffs from this indignity.

13      ***Plaintiff Stacie Walls:***

14      44.   Plaintiff WALLS began working at the EDSO in April 1986, and is one of the

15

16  EDSO's longest-serving, non-sworn employees.

17      45.   She was encouraged to apply for a Correctional Officer (non-sworn) position by a

18  former EDSO Deputy, and received a County Policy Handbook upon commencing work.  The

19  Handbook purported to highlight the EDSO's adherence to, and compliance with, all federal and

20

21  state employment laws regarding unlawful employment practices, such as sex-based

22  discrimination.

23      46.   When Plaintiff WALLS accepted the EDSO's offer of employment in 1986, she

24  was excited to work in law enforcement.  Just like the other Plaintiffs though, Plaintiff WALLS

25  had no knowledge of the EDSO's custom, pattern, and practice of allowing highly-placed, well-

26  connected, male supervisory officers to discriminate against, harass, retaliate against, and

27  otherwise create a hostile, damaging work environment for female employees of the EDSO who

28

-10-

speak up for themselves, complain about discriminatory treatment, refuse unwanted sexual overtures, and otherwise refuse to play by the unofficial "rules" established by their male superiors.

47.     Plaintiff WALLS completed an 18-month probationary period while working at the El Dorado County Jail, handling intake and processing of inmates, clothing exchange, commissary, and related duties with no problems.

48.     After approximately 15 years as a Correctional Officer, Plaintiff WALLS – having sustained a severe workplace injury handling a violent inmate – was contemplating a medical retirement from the EDSO. She accepted a voluntary demotion from Correctional Officer to Sheriff's Assistant in order to be in a less-stressful environment while she contemplated her future. At the urging of former Sheriff Neves, who told Plaintiff she was too valuable to the EDSO to leave, Plaintiff WALLS stayed on.

49.     In or around 2004, Plaintiff WALLS was promoted to the position of CSO. Given her level of experience, knowledge, and familiarity with EDSO's policies and procedures, Plaintiff WALLS handled a wide variety of essential functions for the EDSO, including motor pool, and was frequently relied upon to train other members of the EDSO's non-sworn staff.

50.     Sadly, just as with her fellow Plaintiffs, Plaintiff WALLS in time learned of and became accustomed to the "Boys' Club" within the EDSO. She learned that some male members of this unofficial "Club," including the individuals named in this Complaint and other male supervising officers, target female EDSO employees they deem to be vulnerable and weak, and she tried as best she could to avoid becoming such a target.

51.     Plaintiff WALLS saw that the EDSO's predominantly male supervising officers target female EDSO employees, subject the females to verbal harassment, invasions of privacy, treat them less favorably than their male counterparts (or than the female EDSO employees they

-11-

deem to be playing by the "Boys Club" rules), give the females unusual and demeaning tasks, and unfairly write them up for alleged conduct which other, "favored" members (most of whom are male) of the EDSO engage in routinely without incident or complaint from the supervisors.

52.    For many years, it was known within the EDSO that Plaintiff WALLS had a steady boyfriend; thus, the Boys Club largely left Plaintiff WALLS alone. As much as the Boys Club's discriminatory and harassing treatment of her fellow female colleagues (both sworn and non-sworn) bothered her, Plaintiff WALLS needed her job to support herself and her children and, for the most part, said nothing.

53.    In or around January 2010, Plaintiff WALLS and her longtime boyfriend split up. Within a very short period of time, Plaintiff WALLS's unattached status became known to certain Boys Club members, including Defendants AUWAE, JENCKS, and DREHER.

54.    Starting in or around 2007 and continuing to the present, Defendants have engaged in repeated acts of gender-based discrimination, harassment, and retaliation against Plaintiff WALLS.  One of these events is described above, when Defendant AUWAE ordered Plaintiffs SAHAJ-MYERS and WALLS – for no reason other than to show his power and humiliate them – to clean the EDSO men's locker room alongside male El Dorado County Jail inmates.

55.    In addition, Defendants also discriminated against, harassed, and retaliated against Plaintiff WALLS in that she (and sometimes Plaintiff SAHAJ-MYERS, as well) was allowed only 30-minute lunch periods when other similarly situated workers were allowed a full hour, was denied the chance to obtain other CSO positions in spite of being qualified and capable of handling them, moved to a workspace with zero privacy and where Defendants could – and often did – watch her all day as she attempted to get work done, and was threatened with write-ups and other disciplinary actions if she were to complain to her supervisors about the ways she was being treated.

-12-

1

***Plaintiff Jona Scher:***

2      56.    Plaintiff SCHER began working at the EDSO as a Sheriff's Assistant on June 14,

3   2003.

4      57.    Plaintiff SCHER learned of the EDSO job through a Cal Jobs online posting, and

5   was also encouraged to apply for the position by Defendant THERKILDSEN, whom Plaintiff had

6

7   known prior to applying for employment with the EDSO.

8      58.    As with her fellow Plaintiffs, Plaintiff SCHER received a County Policy

9   Handbook upon commencing work. The Handbook purported to highlight the EDSO's adherence

10  to, and compliance with, all federal and state employment laws regarding unlawful employment

11  practices, such as sex-based discrimination.

12     59.    When she started her Sheriff's Assistant job, Plaintiff SCHER knew nothing of the

13  EDSO's custom, pattern, and practice of allowing highly-placed, well-connected, male

14

15  supervisory officers to discriminate against, harass, retaliate against, and otherwise create a

16  hostile, damaging work environment for female employees of the EDSO – both sworn and non-

17  sworn – who speak up for themselves, complain about discriminatory treatment, refuse unwanted

18  sexual overtures, and otherwise refuse to play by the unofficial "rules" established by their male

19  superiors.

20     60.    Plaintiff SCHER completed a one-year probationary period while still working as

21  a Sheriff's Assistant. In or around 2004, Plaintiff was promoted to CSO.

22

23     61.    At the time she started work for the EDSO, Plaintiff SCHER, the mother of one

24  child, was married and, thus, she was largely left alone by the Defendants and other Boys Club

25  members.

26     62.    Sadly, from the time she began work at the EDSO until going out on stress-related

27  disability in late 2009, Plaintiff SCHER received unwanted attention from certain of her male

28
                                                    -13-

supervisors, including but not limited to Defendants THERKILDSEN and ASHWORTH, regarding her appearance, her activities outside of work, her sex life, and her marital status. While she found these intrusions into her personal life highly inappropriate and offensive, Plaintiff SCHER – just like Plaintiffs SAHAJ-MYERS and WALLS – often just "went along to get along," realizing that the Boys Club would not tolerate her sticking up for herself and would seek to get rid of her if she created any problems for the EDSO.

63.    In or around 2006, certain EDSO employees lodged a formal complaint with COUNTY and the EDSO regarding ASHWORTH's sexualized behavior and comments directed toward Plaintiff SCHER.   This complaint was sustained, and ASHWORTH was deemed to have violated COUNTY and EDSO policies regarding sexual harassment.

64.    So well ensconced in, and protected by, the Boys Club is ASHWORTH that, not only was he not punished for his unlawful conduct toward Plaintiff SCHER, he was *promoted* from Sergeant to Lieutenant.   Thereafter, the EDSO made certain that Plaintiff SCHER and ASHWORTH remained working in close quarters, which contributed mightily toward Plaintiff SCHER's stress, humiliation, and job-related anxiety.

65.    In or around December 2006, Plaintiff SCHER became the target of nasty, defamatory rumors regarding an alleged affair with THERKILDSEN.   Plaintiff SCHER brought these false accusations to Defendant's attention, including giving him the names of EDSO personnel who were propagating these damaging rumors; THERKILDSEN chose to do nothing about Plaintiff SCHER's complaints.

66.    In 2007, while Plaintiff SCHER worked in EDSO Support Services, she spent numerous hours behind closed doors with HOUSE.   HOUSE expressed repeatedly to Plaintiff SCHER that he knew of her personal, outside-of-work relationships and often compared his personal relationship situation with Plaintiff's, asking her for relationship advice.   HOUSE told

-14-

1  Plaintiff SCHER stories of the sexual relationships he had with his ex-wife, and her relationship

2  with her new boyfriend.

3       67.    HOUSE knew, or reasonably should have known, that Plaintiff SCHER had

4  worked with his ex-wife at another job, and these highly descriptive and personal comments made

5  her very uncomfortable.

6

7       68.    Plaintiff SCHER did not say anything to HOUSE about these comments, nor did

8  she talk about HOUSE to other EDSO supervisors because she knew HOUSE is a Boys Club

9  stalwart, and that her job would be in jeopardy if she spoke up.

10      69.    In or around July 2007, Plaintiff SCHER filed for divorce from her husband.

11  Within a matter of days, Plaintiff SCHER's unattached status became known to certain Boys Club

12  members, including Defendants ASHWORTH, GETCHEL, and THERKILDSEN, and was freely

13
   and openly discussed between and amongst them.
14

15      70.    For several years prior to Plaintiff going out on stress leave, Defendants engaged

16  in repeated acts of gender-based discrimination, harassment, and retaliation against Plaintiff

17  SCHER.

18      71.    Defendants' acts of unlawful discrimination, retaliation and harassment include,

19  but are by no means limited to, repeated sexually-based, inappropriate comments by

20
   ASHWORTH, GETCHEL, and THERKILDSEN regarding Plaintiff SCHER's appearance,
21
   sexual activities, and marital separation/dissolution. In addition, Defendant JENCKS repeatedly
22
   made comments to Plaintiff (and to others about Plaintiff SCHER) that he "wanted Jona gone"
23

24  from the EDSO.

25      72.    In or around February 2009, Plaintiff SCHER was reassigned to GETCHEL's

26  chain of command. Shortly thereafter, Plaintiff learned of a new set of false, defamatory rumors

27

28                                          -15-

1 that she and GETCHEL were having an affair, and that this supposed affair was the cause for

2 Plaintiff's new assignment.

3      73.    Just as she had done with THERKILDSEN years earlier, Plaintiff SCHER

4 contacted GETCHEL and told him what she had heard. GETCHEL told Plaintiff that he was well

5 aware of the rumors she mentioned. GETCHEL chose not to do anything to quash these false,

6 defamatory, and psychologically damaging rumors.

7

8                          **FIRST CAUSE OF ACTION**

9             (Sex Discrimination – FEHA – Defendants COUNTY and EDSO Only)

10     74.    Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 73 of this

11 Complaint as though fully set forth herein.

12     75.    California Government Code Section 12940, *et seq.,* provides that it is an unlawful

13 employment practice for an employer such as COUNTY and the EDSO to discriminate in the

14 terms and conditions of employment on the basis of an employee's sex.

15

16     76.    The conduct of COUNTY and EDSO toward Plaintiffs, as set forth above,

17 constitutes an unlawful employment practice in violation of California Government Code §12940.

18     77.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have

19 suffered great humiliation, loss of self-respect, indignity, anxiety, and related physical injuries

20 resulting directly from their persistent, debilitating emotional distress.

21

22     78.    Defendants' actions have caused and continue to cause Plaintiffs grave injuries to

23 their personal and professional reputations, loss of promotional opportunities within the EDSO as

24 well as "lateral" employment opportunities with another law enforcement department, attorneys'

25 fees, medical expenses, lost future earnings and employment benefits, costs of suit, humiliation,

26 anguish, embarrassment, and anxiety, all to their damage in an amount according to proof at trial.

27

28                                    -16-

1

## SECOND CAUSE OF ACTION

2

(Sex Discrimination Retaliation – FEHA – Defendants COUNTY and EDSO Only)

3

79.     Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 78 of this

4

Complaint as though fully set forth herein.

5

6

80.     California Government Code Section 12940(h) makes it an unlawful employment

7

practice for an employer such as COUNTY and the EDSO to retaliate against an employee for

8

opposing an unlawful employment practice or filing a complaint of discrimination and

9

harassment.

10

81.     COUNTY and EDSO violated California Government Code §12940(h) when –

11

after Plaintiffs opposed Defendants' unlawful employment practices – these Defendants

12

13

commenced unfounded Internal Affairs investigations regarding Plaintiffs, disciplined them

14

verbally and in writing, singled them out for derogatory and damaging "write-ups" for conduct

15

other EDSO employees routinely engage in without comment or penalty, and caused them to live

16

in perpetual fear of joblessness.

17

82.     Defendants' conduct toward Plaintiffs, as described above, constitutes an unlawful

18

employment practice in violation of Government Code §12940(h).

19

83.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have

20

suffered great humiliation, loss of self-respect, indignity, anxiety, and related physical injuries

21

resulting directly from persistent, debilitating emotional distress.

22

23

84.     Defendants' actions have caused and continue to cause Plaintiffs grave injuries to

24

their personal and professional reputations, loss of promotional opportunities within the EDSO as

25

well as "lateral" employment opportunities with another law enforcement department, attorneys'

26

fees, medical expenses, lost future earnings and employment benefits, costs of suit, humiliation,

27

anguish, embarrassment, and anxiety, all to their damage in an amount according to proof at trial.

28

-17-

**THIRD CAUSE OF ACTION**

(Aiding and Abetting Unlawful Sex Discrimination – FEHA – All Defendants)

85.     Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 84 of this Complaint as though fully set forth herein.

86.     California Government Code Section 12940(i) makes it an unlawful employment practice for "any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this part, or to attempt to do so."

87.     The conduct of each named Defendant in this action toward Plaintiffs, as set forth above, constitutes an unlawful employment practice in violation of California Government Code §12940(i) in that these Defendants aided, abetted, incited, and coerced the other Defendants into acting in ways that violated Plaintiffs' employment rights under United States and California Constitutions, as well as federal and state statutes.

88.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered great humiliation, loss of self-respect, indignity, anxiety, and related physical injuries resulting directly from their persistent, debilitating emotional distress.

89.     Defendants' actions have caused and continue to cause Plaintiffs grave injuries to their personal and professional reputations, loss of promotional opportunities within the EDSO as well as "lateral" employment opportunities with another law enforcement department, attorneys' fees, medical expenses, lost future earnings and employment benefits, costs of suit, humiliation, anguish, embarrassment, and anxiety, all to their damage in an amount according to proof at trial.

**FOURTH CAUSE OF ACTION**

(Failure To Prevent Discrimination – FEHA – Defendants COUNTY and EDSO, only)

90.     Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 89 of this Complaint as though fully set forth herein.

-18-

91.     California Government Code Section 12940(k) makes it an unlawful employment practice for "an employer, labor organization, employment agency, apprenticeship training program, or any training program leading to employment, to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."

92.     Defendants in this action violated Section 12940(k) with regard to Plaintiffs when they knowingly, purposely, and recklessly created a hostile, abusive working environment for Plaintiffs which left them afraid to come in to work for fear of what new, damaging, unfounded, and retaliatory actions the members of the "Boys Club" would throw at them. Defendants failed to conduct reasonable and impartial investigations when Plaintiffs complained about discriminatory conduct on the part of their supervisors. Defendants also failed to take reasonable steps necessary to investigate the discrimination/harassment/retaliation issues Plaintiffs raised and to prevent these issues from occurring and continuing.

93.     Defendants' conduct toward Plaintiffs, as set forth above, constitutes an unlawful employment practice in violation of California Government Code §12940(k).

94.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered great humiliation, loss of self-respect, indignity, anxiety, and related physical injuries resulting directly from their persistent, debilitating emotional distress.

95.     Defendants' actions have caused and continue to cause Plaintiffs grave injuries to their personal and professional reputations, loss of promotional opportunities within the EDSO as well as "lateral" employment opportunities with another law enforcement department, attorneys' fees, medical expenses, lost future earnings and employment benefits, costs of suit, humiliation, anguish, embarrassment, and anxiety, all to their damage in an amount according to proof at trial.

/ / /

/ / /

-19-

**FIFTH CAUSE OF ACTION**

(Violations of Title VII of the Civil Rights Act of 1964,

42 U.S.C. Section 2000e, *et seq.* – All Defendants)

96.　Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 95 of this Complaint as though fully set forth herein.

97.　Defendants' actions and failures to act as alleged above constitute unlawful disparate treatment and an equally unlawful and damaging pattern and practice of violations of Plaintiffs' rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* to be free from sex discrimination in her workplace. Defendants' treatment of Plaintiffs was, at all times, rife with discriminatory intent both subtle and obvious, and carried out for purposes of either terminating Plaintiffs' employment (for which each Plaintiff is highly qualified) or forcing Plaintiffs to quit, rather than face the continuing onslaught of Defendants' actions toward them.

98.　Defendants' actions have caused and continue to cause Plaintiffs substantial injuries to their personal and professional reputations, loss of promotional opportunities within the EDSO as well as "lateral" employment opportunities with another law enforcement department, attorneys' fees, medical expenses, lost future earnings and employment benefits, costs of suit, humiliation, anguish, embarrassment, and anxiety, all to their damage in an amount according to proof at trial.

99.　As to the individual Defendants only, the acts as alleged herein were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure Plaintiffs, ruin their careers, and cause Plaintiffs to suffer mental anguish, anxiety, and great emotional distress. The acts of these individual Defendants were done in conscious disregard of the substantial risk of severe emotional harm to Plaintiffs and with the intent to injure Plaintiffs,

-20-

1  constituting oppression, fraud, and malice under California Civil Code Section 3294; thus

2  entitling Plaintiffs to recover punitive damages against the named individual Defendants only.

3  ## SIXTH CAUSE OF ACTION

4  (Violations of Civil Rights Laws – All Defendants)

5
6  100.    Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 99 of this

7  Complaint as though fully set forth herein.

8  101.    Defendants' actions and failures to act as alleged above constitute an unlawful

9  pattern and practice of violations of Plaintiffs' rights under United States Civil Rights Laws, 42

10 U.S.C. §§1983, 1985.    Defendants, while acting under color of state authority and law,

11 wrongfully and intentionally discriminated against, harassed, and retaliated against Plaintiffs

12 because of their protected categories, including but not limited to sex; thus, Defendants treated

13
   Plaintiffs in an unequal and unfair manner without any rational or legitimate basis.
14

15 102.    Defendants' actions, as set forth above, constitute violations under color of law of

16 Plaintiffs' rights, privileges and immunities guaranteed her by the First Amendment of the United

17 States Constitution right of free speech and to petition the government for redress of grievances,

18 the equal protection clause of the United States Constitution, and the due process clause of the

19 Fourteenth Amendment of the United States Constitution.

20
21 103.    Defendants' actions have caused and continue to cause Plaintiffs substantial

22 injuries to their personal and professional reputations, loss of promotional opportunities within

23 the EDSO as well as "lateral" employment opportunities with another law enforcement

24 department, attorneys' fees, medical expenses, lost future earnings and employment benefits,

25 costs of suit, humiliation, anguish, embarrassment, and anxiety, all to their damage in an amount

26 according to proof at trial.

27

28

COMPLAINT FOR DAMAGES, EQUITABLE, AND/OR INJUNCTIVE RELIEF
SAHAJ-MYERS, *ET AL.* V. COUNTY OF EL DORADO, ET AL., CASE NO. _____

104.    As to the individual Defendants only, the acts as alleged herein were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure Plaintiffs, ruin their careers, and cause Plaintiffs to suffer mental anguish, anxiety, and great emotional distress. The acts of these individual Defendants were done in conscious disregard of the substantial risk of severe emotional harm to Plaintiffs and with the intent to injure Plaintiffs, constituting oppression, fraud, and malice under California Civil Code Section 3294; thus entitling Plaintiffs to recover punitive damages against the named individual Defendants only.

### PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment against Defendants, and each of them as follows:

1. For general damages in an amount according to proof;

2. For special damages in an amount according to proof;

3. For prejudgment interest in an amount according to proof;

4. For equitable and/or injunctive relief according to proof;

5. For reasonable attorney's fees and cost of suit therein;

6. For punitive or exemplary damages against the individual defendants only; and,

7. For such other and further relief as the court may deem proper.

8. Plaintiffs hereby demand a trial by jury.

Dated: July 24, 2010                    WATTS LAW OFFICES

By: ___/s/_____
        Douglas E. Watts, Esq.
        Attorneys for Plaintiff

-22-